# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

PEOPLE v BLACK

Docket No. 168159. Argued April 8, 2026 (Calendar No. 1). Decided July 30, 2026.

Donyelle M. Black was convicted in 1988 following a bench trial of first-degree felony murder, MCL 750.316(1)(b); armed robbery, MCL 750.529; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was 15 years old at the time of the murder. The trial court sentenced defendant to serve life in prison without the possibility of parole (LWOP) for felony murder. Following the United States Supreme Court's decisions in *Miller v Alabama*, 567 US 460 (2012), concluding that mandatory LWOP sentences for juveniles are cruel and unusual punishment under US Const, Am VIII, and *Montgomery v Louisiana*, 577 US 190 (2016), holding that the *Miller* holding is retroactive, the prosecution moved, pursuant to MCL 769.25 and MCL 769.25a, to reimpose defendant's LWOP sentence. At his *Miller* hearing, defendant presented a forensic psychologist as an expert witness who testified that defendant had manifested developmental attributes as a teenager that were not typically found in adolescents, such as a lack of empathy and remorse, along with typical attributes of a 15-year-old, like impulsivity and immaturity. She opined that these traits were no longer present in defendant as an adult, which suggested rehabilitation. The prosecution did not present any witnesses at the hearing, and the trial court entered an order stating that the prosecution did not bear the burden of proof at the hearing and concluding that life without parole was not a disproportionate sentence. The court then entered an amended judgment of sentence reimposing defendant's LWOP sentence.

Defendant appealed, and while the appeal was pending, the Michigan Supreme Court held in *People v Taylor*, 510 Mich 112 (2022), that the prosecution bears the burden of proof at a *Miller* hearing. The Court of Appeals vacated defendant's amended judgment of sentence in light of *Taylor* and the parties' stipulations and remanded to the trial court for a second *Miller* hearing. The prosecution moved on remand for the trial court to compel defendant to submit to a psychological examination by a prosecution expert or, alternatively, to strike the psychological testimony of defendant's expert from the first *Miller* hearing and any reports by defense experts. The trial court, Cheryl A. Matthews, J., granted the motion. Defendant filed an interlocutory application for leave to appeal, and the Court of Appeals, O'BRIEN, P.J., and MURRAY and PATEL, JJ., affirmed. ___ Mich App ___ (December 19, 2024) (Docket No. 367831). Defendant's application for leave to appeal in the Supreme Court was granted. ___ Mich ___; 25 NW3d 330 (2025).

In a unanimous opinion by Justice HOOD, the Supreme Court *held*:

If a defendant indicates an intent to introduce expert psychological evidence at a *Miller* hearing, a trial court may compel the defendant to undergo a similar examination by a prosecution expert, consistent with the defendant's federal and state constitutional rights against self-incrimination, US Const, Am V; Const 1963, art 1, § 17. If the defendant chooses to undergo a psychological examination by a prosecution expert, any evidence obtained during the examination is admissible only as rebuttal and may not be used by the prosecution as part of its case-in-chief.

1. Defendant's federal and state constitutional rights against self-incrimination were not violated when the trial court required him to submit to a psychological evaluation conducted by an expert chosen by the prosecution as a precondition to offering his own psychological evidence at his *Miller* hearing. It is well established that if a defendant does not place their mental status at issue at a trial or a sentencing proceeding, the prosecution's use of a court-ordered psychological evaluation against the defendant violates the defendant's constitutional right against self-incrimination. But if a defendant presents expert psychological evidence, the prosecution is permitted to offer evidence obtained during a court-ordered psychological evaluation for the limited purpose of rebuttal. From this principle, it naturally follows that, if a defendant indicates their intent to introduce expert psychological evidence at a proceeding, the trial court may compel the defendant to submit to a psychological evaluation conducted by an expert chosen by the prosecution. Michigan trial courts generally have the authority to order postconviction psychological and psychiatric evaluations for use at sentencing. The Fifth Amendment right against self-incrimination attaches at a court-ordered psychiatric examination used for sentencing purposes, but that right does not preclude courts from ordering these evaluations under the parameters set forth here. If compelled psychological evaluations were never permissible for purposes of *Miller* hearings, as defendant argues, prosecutors would effectively be prohibited from presenting psychological evidence to challenge the defendant's psychological evidence, which would undermine the adversarial process.

2. If a defendant indicates an intent to introduce expert psychological evidence at a *Miller* hearing, the trial court is permitted under the Fifth Amendment to compel the defendant to submit to a court-ordered psychological examination to rebut the defendant's evidence in kind. A defendant's mental status is relevant in the *Miller* context. Resentencing pursuant to *Miller* requires an assessment of a defendant's rehabilitative potential, which has an individualized mental component. A defendant's mental state may also be relevant when assessing other *Miller* factors, such as the defendant's immaturity, impetuosity, and failure to appreciate risks and consequences, as well as the defendant's family and home environment. Further, defendants may wish to introduce expert evidence of their mental status to refute claims that they lack the capacity for rehabilitation or to show that the attributes of their youth that led to the commission of the sentencing offense are no longer present.

3. To the extent that the trial court sua sponte incorporated the record of the first *Miller* hearing into the record of the second *Miller* hearing, the order was improper. If defendant chooses to introduce his own expert psychological evidence and, by extension, chooses to submit to a compelled psychological examination, the results of such an examination would not be admissible during the prosecution's case-in-chief. Rather, the prosecution would be permitted to introduce

such evidence only for rebuttal purposes. The second *Miller* hearing is a distinct proceeding at which the burden is on the prosecution to prove facts and circumstances that rebut the presumption against LWOP by clear and convincing evidence. Proceedings will begin anew at the second hearing to ensure that the proper standard of review is applied.

4. A defendant's Fifth Amendment right against self-incrimination is not violated when a trial court orders the defendant to decide whether to submit to a compelled psychological examination before the prosecution rests its case-in-chief at a *Miller* hearing. The Fifth Amendment generally protects against the *use* of a compelled psychological examination at a trial or sentencing proceeding. Therefore, the focus of the Fifth Amendment inquiry is on the use of the compelled statements. Here, the Fifth Amendment does not prohibit the trial court from requiring defendant to decide whether to sit for a psychological examination by the prosecution's expert before the commencement of the *Miller* hearing. Defendant's decision about whether to partake in such an examination does not lock him into a defense strategy at the *Miller* hearing. Even if defendant decides to sit for this examination, the prosecution may use the fruits of it only to rebut evidence presented by defendant at the *Miller* hearing. If defendant decides not to introduce expert psychological evidence after the prosecution rests at the *Miller* hearing, the prosecution would be precluded from introducing evidence from its own psychological evaluation. Moreover, the scope of the prosecution's rebuttal evidence must be limited to the scope of evidence presented by the defendant, even if that scope is narrower than the initial referral question.

Court of Appeals decision affirmed; trial court orders vacated to the extent that the court incorporated the record from the first *Miller* hearing into the second hearing's record and to the extent that the court relied on defendant's indication of intent to introduce psychological evidence during the first *Miller* hearing; case remanded to the trial court.

Justice THOMAS, concurring, agreed with the majority's conclusions and wrote separately to highlight that the relevant federal and state caselaw permits, but guards, the scope of compelled examinations and any resulting testimony. Tailoring the scope of an examination ensures that rights against self-incrimination and related Sixth Amendment rights are respected. Additionally, Justice THOMAS noted that issues not before the Court but that may subsequently arise in *Miller* hearings when a defendant seeks to offer testimony regarding an expert psychological examination of the defendant include, first, the identity of the expert and process for appointment. In other contexts in Michigan where compelled examinations are conducted, statutory law stipulates that the trial court appoint the Center for Forensic Psychiatry, another qualified examiner, or a facility licensed by the Department of Health and Human Services to conduct such examinations. Second, new practices and procedures for *Miller* hearings may need to be developed by the trial courts in response to the majority opinion.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED  July 30, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                     No. 168159

DONYELLE MICHAEL BLACK,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

HOOD, J.

This case involves whether a trial court may compel a defendant to submit to a psychological evaluation conducted by a prosecution expert as a precondition to the admission of the defendant's own psychological evidence at a hearing conducted pursuant to MCL 769.25a and *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012). Defendant, Donyelle Michael Black, was sentenced to life imprisonment without the possibility of parole (LWOP) for a crime he committed when he was 15 years old. He

is currently awaiting resentencing at a *Miller* hearing. Ahead of Black's *Miller* hearing, the trial court entered an order, giving Black the choice to either submit to a psychological examination conducted by an expert chosen by the prosecution or forgo the ability to introduce his own expert psychological evidence at the hearing.

We hold that if a defendant indicates an intent to introduce expert psychological evidence at a *Miller* hearing, a trial court may compel the defendant to undergo a similar examination by a prosecution expert, consistent with the defendant's federal and state constitutional rights against self-incrimination. See US Const, Am V; Const 1963, art 1, § 17. However, we clarify that any evidence gathered during the prosecution expert's examination, or derived from such an examination, is admissible solely as rebuttal evidence and may not be admitted during the prosecution's case-in-chief. We remand this case to the trial court for further proceedings, consistent with this opinion.

## I. FACTUAL BACKGROUND

This case started with a murder in 1987 when Black was 15 years old. He and a juvenile accomplice waited outside a Dairy Queen to find a person to rob. They approached Wanda Sutherland, pointed a gun at her, and robbed her of her money. Black then instructed Sutherland to go into the woods, where he beat, raped, and fatally shot her. In 1988, following a bench trial, Black was convicted of first-degree felony murder, MCL 750.316(1)(b); armed robbery, MCL 750.529; and felony-firearm, MCL 750.227b.[1]

---

[1] Black was also found guilty of two counts of first-degree criminal sexual conduct, MCL 750.520b. However, these counts were later vacated and merged with his felony-murder conviction.

Relevant to this appeal, the trial court sentenced Black to LWOP for his felony-murder conviction.

Over 20 years later, the United States Supreme Court held that mandatory juvenile LWOP sentences violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Miller*, 567 US at 479; see US Const, Am VIII; see also *Montgomery v Louisiana*, 577 US 190, 206; 136 S Ct 718; 193 L Ed 2d 599 (2016) (holding that *Miller* has retroactive effect). But it also held that discretionary LWOP does not offend the Eighth Amendment so long as the sentencing court has "the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 US at 489. In light of *Miller* and *Montgomery*, the prosecution moved to reimpose Black's LWOP sentence. See MCL 769.25; MCL 769.25a.[2]

Before Black's *Miller* hearing, he retained expert witness Dr. Carol Holden, a licensed forensic psychologist. Dr. Holden conducted a four-hour interview with Black over Zoom. She prepared a psychological evaluation and expert report, based on her interview with Black, as well as other documents and records. At the *Miller* hearing, the trial court admitted Dr. Holden's report, and Dr. Holden testified. During her testimony,

---

[2] The Michigan Legislature enacted a sentencing scheme in response to the Supreme Court's decision in *Miller* eliminating mandatory LWOP as a permissible punishment for individuals who were convicted of crimes committed while they were juveniles. See *People v Boykin*, 510 Mich 171, 179-180; 987 NW2d 58 (2022). That is codified in MCL 769.25. *Id*. At the same time, the Legislature codified a sentencing procedure in the event that *Miller* was found to have retroactive applicability. *Id*. The conditional pathway is codified in MCL 769.25a. *Id*. at 179-180 & n 2. After the United States Supreme Court eventually confirmed that *Miller* applies retroactively, see *Montgomery*, 577 US at 206, hearings began under these statutes, which are colloquially referred to as *Miller* hearings. See, e.g., *People v Taylor*, 510 Mich 112, 122; 987 NW2d 132 (2022) (describing a *Miller* hearing that was conducted under MCL 769.25).

3

Dr. Holden explained that when Black was 15 years old, he manifested developmental attributes of a typical 15-year-old, such as impulsivity and immaturity, as well as attributes not typically found in adolescents, such as lack of empathy and remorse. She explained that it is not typical for a 15-year-old to commit a crime of this magnitude, but there were elements of adolescent reasoning and decision-making involved in the execution of the crime. Dr. Holden also discussed Black's difficult upbringing, explaining that he experienced abuse and neglect during his childhood and was exposed to community violence from a young age.

Dr. Holden explained that, at the time she examined Black, he struggled to explain why the robbery escalated into a rape and murder. He expressed remorse for his crimes. He described himself as a "horrible kid" who did not think about the impact his crimes would have on the victim, her family, and the community. Dr. Holden opined that Black spoke about the impact of the crimes with empathy and compassion. Dr. Holden believed that Black demonstrated potential for rehabilitation. She explained that Black's misconduct in prison had decreased as he aged. She added that he participated in self-help programs, treatment programs, and counseling, and he pursued educational opportunities while incarcerated. Dr. Holden concluded that Black's traits of impulsivity, aggressiveness, irritability, recklessness, and remorselessness were no longer present. She testified that Black's maturation and growth suggested rehabilitation.

Black called five additional witnesses at the *Miller* hearing, who discussed Black's difficult childhood as well as his maturation and rehabilitative efforts. The prosecution did not call any witnesses. At the conclusion of the *Miller* hearing, the trial court reimposed Black's LWOP sentence, stating that "the Court does not find that these factors mitigate

4

against a sentence of mandatory life without parole." The trial court's order stated that the prosecution did not bear the burden of proof at the hearing. Black appealed.

During the pendency of Black's appeal, this Court issued our opinion in *People v Taylor*, 510 Mich 112, 138; 987 NW2d 132 (2022), holding that the prosecution bears the burden of proof at a *Miller* hearing. In light of *Taylor*, and by stipulation of the parties, the Court of Appeals vacated Black's amended judgment of sentence and remanded to the trial court for a second *Miller* hearing. *People v Black*, unpublished order of the Court of Appeals, entered March 1, 2023 (Docket No. 362394).

On remand, during a status conference, the trial court apparently sua sponte orally ordered that all evidence from the first *Miller* hearing would be incorporated into the record of the second *Miller* hearing.[3] Subsequently, the prosecution filed a motion requesting that the trial court compel Black to submit to a psychological examination by prosecution expert Dr. Kris Mohandie, or alternatively, strike the psychological testimony and report of Dr. Holden and preclude the admission of additional psychological testimony or reports by defense experts.

The trial court granted the prosecution's motion, stating: "The Defendant is ordered to submit to a psychological examination by prosecution expert Kris Mohandie by October 1, 2023. In the alternative, the parties may stipulate to set this order aside and strike the psychological testimony and report of defense expert Carol Holden." Black filed an interlocutory application for leave to appeal and, in a published opinion, the Court of Appeals affirmed. *People v Black*, ___ Mich App ___; ___ NW3d ___ (December 19,

---

[3] While both parties agree that such an order was given, the lower court record does not show that the trial court entered the order.

2024) (Docket No. 367831).  We granted Black's application for leave to appeal, directing the parties to address:

> (1) whether the constitutional bar on compelled self-incrimination precludes a sentencing court from requiring the defendant to submit to a psychological examination by the prosecution's expert as a precondition to admitting testimony from the defendant's psychological expert at a resentencing hearing conducted pursuant to MCL 769.25a and *Miller v Alabama*, 567 US 460 (2012), see US Const, Ams V and XIV; Const 1963, art 1, § 17; (2) if not, whether the sentencing court may require the defendant to make his or her decision on whether to submit to a compelled psychological examination before the prosecution has rested its case-in-chief; and (3) whether the results of a compelled psychological examination are admissible during the prosecution's case-in-chief or solely as rebuttal evidence.  [*People v Black*, ___ Mich ___, ___; 25 NW3d 330, 330 (2025).]

## II.  STANDARD OF REVIEW

We review questions of constitutional law de novo.  *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018).  We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010).  However, when a trial court's evidentiary decision involves a question of law, we review that question of law de novo.  *Id*.

## III.  LEGAL BACKGROUND

This case deals with the intersection of juvenile-lifer proceedings and guarantees against self-incrimination.  We briefly discuss the legal backdrop for both against which we consider this case.

## A.  JUVENILE LIFE WITHOUT PAROLE

The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments*

6

*inflicted.*" US Const, Am VIII (emphasis added). "Michigan's Constitution has its own punishment provision, but it is broader than the federal Eighth Amendment counterpart." *People v Parks*, 510 Mich 225, 241; 987 NW2d 161 (2022). The Michigan Constitution provides: "Excessive bail shall not be required; excessive fines shall not be imposed; *cruel or unusual punishment shall not be inflicted*; nor shall witnesses be unreasonably detained." Const 1963, art 1, § 16 (emphasis added).

"[C]hildren are constitutionally different from adults for purposes of sentencing." *Miller*, 567 US at 471. "Juveniles lack maturity, possess an underdeveloped sense of responsibility, are more vulnerable to negative outside influence, have limited control over their own environment, and have transitory personality traits." *Taylor*, 510 Mich at 125. "[T]he distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller*, 567 US at 472.

In *Miller*, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id*. at 479. "Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id*. at 476. "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id*. at 479. Under *Miller*, before sentencing a juvenile to LWOP, courts are required to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.

7

In Michigan, if a defendant is under 21 years old at the time of their crime and is "convicted of certain enumerated offenses, including first-degree murder, the prosecutor may file a motion seeking to have the juvenile sentenced to LWOP."[4] *Taylor*, 510 Mich at 130; see MCL 769.25(2). If the prosecutor moves to sentence a juvenile to LWOP under MCL 769.25(2), the trial court shall conduct a *Miller* hearing as part of the sentencing process. MCL 769.25(6). At the hearing, the trial court must consider the following "*Miller* factors," as well as any other relevant criteria:

> (1) [T]he juvenile's chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile's family and home environment—from which he cannot usually extricate himself—no matter how brutal or dysfunctional; (3) the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him; (4) the incompetencies of youth, which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's possibility of rehabilitation. [*Taylor*, 510 Mich at 126, quoting *Miller*, 567 US at 477-478 (quotation marks omitted).]

As the moving party, the prosecution bears "the burden of demonstrating facts that support their extraordinary request to sentence a juvenile defendant to LWOP. In doing so, the prosecutor must prove facts and circumstances that rebut the presumption against LWOP by the well-known standard of clear and convincing evidence." *Taylor*, 510 Mich

---

[4] MCL 769.25 "applies to a criminal defendant who was less than 18 years of age at the time he or she committed" certain enumerated offenses. MCL 769.25(1). In *Parks*, 510 Mich at 268, this Court extended the protections of MCL 769.25 to 18-year-olds, and in *People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (April 10, 2025) (Docket Nos. 166428 and 166654); slip op at 2, 13-14, we extended the protections to 19- and 20-year-olds.

at 135-136. When determining whether to impose LWOP, the trial court should "start from the premise that the juvenile defendant before them, like most juveniles, has engaged in criminality because of transient immaturity, not irreparable corruption." *Id*. at 135. The trial court "must consider all the evidence before it and determine whether the presumption has been rebutted in order to impose LWOP." *Id*. at 136.

## B. SELF-INCRIMINATION

The United States Constitution and the Michigan Constitution both guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. "The state constitutional right against self-incrimination is interpreted no differently than the federal right." *People v Bassage*, 274 Mich App 321, 324; 733 NW2d 398 (2007). Michigan has interpreted this right "to extend beyond the defendant's conviction and afford[] protection against compelled self-incrimination in the sentencing phase of a criminal proceeding." *People v Watkins*, 247 Mich App 14, 19; 634 NW2d 370 (2001); see also *People v Wright*, 431 Mich 282, 295; 430 NW2d 133 (1988) (holding that the right against self-incrimination "attaches at a court-ordered psychiatric examination used for sentencing purposes"). "[T]he availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *In re Gault*, 387 US 1, 49; 87 S Ct 1428; 18 L Ed 2d 527 (1967).

In *Estelle v Smith*, 451 US 454; 101 S Ct 1866; 68 L Ed 2d 359 (1981), the Supreme Court held that Fifth Amendment protections extend to statements made by a defendant during a competency evaluation. There, a defendant in Texas faced the death penalty. *Id*.

9

at 456. Texas's capital punishment sentencing procedure placed the burden on the prosecution to prove a defendant's future dangerousness.[5] *Id.* at 457-458. To meet this burden, the prosecution introduced evidence obtained from the defendant during a pretrial court-ordered competency evaluation. *Id.* at 458-460, 466. The United States Supreme Court held that the defendant's Fifth Amendment right against self-incrimination was implicated. *Id.* at 466.

The Court emphasized that the defendant had "introduced no psychiatric evidence" at the sentencing proceeding, "nor had he indicated that he might do so." *Id.* The Court held: "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id.* at 468. Because statements made during the defendant's court-ordered psychiatric examination were not "given freely and voluntarily without any compelling influences," the statements "could be used as the State did at the penalty phase only if [the defendant] had been

---

[5] Future dangerousness was one of three factors to be assessed during the penalty phase of Texas's capital punishment proceedings. As the Supreme Court explained in *Estelle*:

> In Texas, capital cases require bifurcated proceedings—a guilt phase and a penalty phase. If the defendant is found guilty, a separate proceeding before the same jury is held to fix the punishment. At the penalty phase, if the jury affirmatively answers three questions on which the State has the burden of proof beyond a reasonable doubt, the judge must impose the death sentence. One of the three critical issues to be resolved by the jury is whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. In other words, the jury must assess the defendant's future dangerousness. [*Estelle*, 451 US at 457-458 (quotation marks and citations omitted).]

10

apprised of his rights and had knowingly decided to waive them." *Id*. at 469 (quotation marks and citation omitted).

Six years later, in *Buchanan v Kentucky*, 483 US 402; 107 S Ct 2906; 97 L Ed 2d 336 (1987), the Supreme Court again addressed the constitutionality of the admission of findings from court-ordered psychological examinations. There, the defendant presented evidence of psychological reports to "establish the 'mental status' defense of extreme emotional disturbance." *Id*. at 423. To rebut this evidence, the prosecution introduced evidence of a court-ordered psychological evaluation, which had been jointly requested by the defense and prosecution to enable the defendant to receive psychiatric treatment while awaiting trial. *Id*. at 410-411 & n 11, 423. The Court reasoned that the prosecution could not properly respond to the defendant's mental-health-status defense "unless it presented other psychological evidence." *Id*. at 423. The Court therefore held that the "introduction of such a report for this limited rebuttal purpose does not constitute a Fifth Amendment violation." *Id*. at 423-424.

In *Kansas v Cheever*, 571 US 87; 134 S Ct 596; 187 L Ed 2d 519 (2013), the Court reaffirmed that "where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit a crime, the prosecution may offer evidence from a court-ordered psychological examination for the limited purpose of rebutting the defendant's evidence."[6] *Id*. at 98. The Court explained that "[a]ny other rule would undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental

---

[6] The Court clarified that its holding in *Buchanan* was not limited to circumstances in which the court-ordered evaluation was jointly requested by the parties. *Cheever*, 571 US at 93.

state at the time of the alleged crime." *Id*. at 94. "When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him." *Id*.

## IV. ANALYSIS

Black argues that the trial court violated his federal and state constitutional rights against self-incrimination by requiring him to submit to a psychological evaluation conducted by the prosecution's expert as a precondition to offering his own psychological evidence at his *Miller* hearing. We disagree.

It is well established that if a defendant does not place their mental status at issue at a trial or a sentencing proceeding, the prosecution's use of a court-ordered psychological evaluation against the defendant violates the defendant's constitutional right against self-incrimination. *Estelle*, 451 US at 468. But if a defendant presents expert psychological evidence, the prosecution is permitted to offer evidence obtained during a court-ordered psychological evaluation for the limited purpose of rebuttal. *Buchanan*, 483 US at 423-424; *Cheever*, 571 US at 98.

From this principle, it naturally follows that if a defendant indicates their intent to introduce evidence at a proceeding from an expert psychologist who has evaluated the defendant, the trial court may compel the defendant to submit to a similar psychological evaluation by a prosecution expert. See *Bilal v United States*, 240 A3d 20, 28 (DC, 2020). "[C]ourts have relied on *Cheever* as a basis for rejecting arguments that a trial court violates the defendant's Fifth Amendment rights by refusing to let a defense mental health expert

12

testify about the defendant's mental condition unless the defendant submits to an examination by a government mental health expert." *Id*.; see also *State v Madison*, 160 Ohio St 3d 232, 254; 155 NE3d 867 (2020); *Hernandez v Davis*, 750 F Appx 378, 383 (CA 5, 2018).

Black contends that compelled psychological evaluations are never permissible for purposes of *Miller* hearings. We disagree. Michigan trial courts generally have the authority to order postconviction psychological and psychiatric evaluations for use at sentencing. *Wright*, 431 Mich at 287 (explaining that postconviction presentence evaluations may be "court-ordered or requested as part of the presentence investigative process to determine the defendant's character traits for purposes of sentencing"). The Fifth Amendment right against self-incrimination "attaches at a court-ordered psychiatric examination used for sentencing purposes." *Id*. at 295. But that right does not preclude courts from ordering these evaluations, under the parameters that we set forth here.

*Miller* hearings differ from ordinary sentencing hearings because at typical sentencing hearings, "neither the prosecutor nor the defendant generally bears any particular burden," whereas at a *Miller* hearing, the burden is on the prosecution.[7] *Taylor*, 510 Mich at 133, 135-136. At *Miller* hearings, the prosecution bears the burden to rebut, by clear and convincing evidence, the presumption "that the particular juvenile defendant

---

[7] As we explained in *Taylor*, a *Miller* hearing also has "unique constitutional implications beyond those present at other sentencing hearings because it necessarily involves defendants who commit crimes when they are juveniles—individuals who are constitutionally different from their adult counterparts for purposes of sentencing." *Taylor*, 510 Mich at 133 (quotation marks and citation omitted). Further, "unlike a typical sentencing, a *Miller* hearing is not a natural progression of a criminal proceeding because the prosecutor must file a motion to change the status quo posttrial." *Id*.

is not deserving of LWOP." *Id*. at 138.  Defendants may subsequently introduce evidence in mitigation, including expert psychological evidence on relevant topics.[8]  If a defendant introduces such evidence, consistent with *Buchanan* and *Cheever*, prosecutors are permitted to introduce evidence to challenge it.[9]  To adopt Black's position would be to effectively prohibit prosecutors from presenting psychological evidence to challenge the defendant's psychological evidence, which would "undermine the adversarial process." *Cheever*, 571 US at 94.

---

[8] *Miller* hearings are, in some ways, analogous to the capital punishment proceedings involved in *Estelle*, 451 US at 457-458.  Both are postconviction procedures that place the burden on the prosecution to prove that the defendant poses a continuing threat to society. In *Estelle*, the Supreme Court reasoned that a Fifth Amendment violation occurred when the prosecution offered evidence of a court-ordered competency exam where the defendant "introduced no psychiatric evidence, nor had he indicated that he might do so." *Id*. at 466. This holding logically leads to the conclusion that, if the defendant had introduced psychiatric evidence, the prosecution would have been permitted to offer its own psychiatric evidence as rebuttal, regardless of the defendant's lack of burden at these proceedings.

[9] Some Michigan statutes require trial courts to compel a psychiatric exam in certain situations, and they require these compelled evaluations to be conducted by the Center for Forensic Psychiatry or other qualified examiner.  See MCL 768.20a(2) (stating that after a defendant provides notice of intent to assert an insanity defense, the "court shall order the defendant to undergo an examination relating to his or her claim of insanity by personnel of the center for forensic psychiatry or by other qualified personnel, as applicable, for a period not to exceed 60 days from the date of the order"); MCL 330.2026(1) ("Upon a showing that the defendant may be incompetent to stand trial, the court shall order the defendant to undergo an examination by personnel of either the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of incompetence to stand trial.").  MCL 769.25 contains no such requirement.  But the fact that MCL 769.25 does not require or set limitations on compelled examinations does not mean that these examinations are prohibited under the statute.  Nothing in the plain language of MCL 769.25 prevents the use of court-ordered psychological evaluations during the *Miller* process.

A defendant's mental status is relevant in the *Miller* context. Resentencing pursuant to *Miller* requires an assessment of a defendant's rehabilitative potential. *Id*. at 126. This factor can be assessed through empirical metrics, such as the defendant's prison records and participation in programming. But rehabilitative potential could also involve an individualized mental component. Similarly, a defendant's mental state may be relevant when assessing other *Miller* factors, such as a defendant's "immaturity, impetuosity, and failure to appreciate risks and consequences" and the defendant's "family and home environment." *Taylor*, 510 Mich at 126 (quotation marks and citation omitted); see also *People v Bennett*, 335 Mich App 409, 429; 966 NW2d 768 (2021) (explaining that while mental illness is not a *Miller* factor, it is imbedded into the first two *Miller* factors).

Defendants may wish to introduce expert evidence of their mental status to refute claims that they lack the capacity for rehabilitation. Defendants may also wish to use expert psychological reports and testimony as evidence that the attributes of their youth that led to the commission of the sentencing offense are no longer present. Thus, regardless of evidentiary burden, defendants may have legitimate reason to introduce expert evidence of their mental status at a *Miller* hearing. We hold that if a defendant indicates an intent to introduce expert psychological evidence at a *Miller* hearing, the trial court is permitted under the Fifth Amendment to compel the defendant to submit to a court-ordered psychological examination to rebut the defendant's evidence in kind.

We clarify that Black has not yet introduced, nor indicated his intent to introduce, expert psychological evidence at his *second Miller* hearing. At Black's first *Miller* hearing, he did introduce expert psychological evidence that was the result of a forensic interview with Black. But the amended judgment of sentence following the first *Miller* hearing was

15

subsequently vacated in light of our decision in *Taylor*. To the extent the trial court sua sponte incorporated the record of the first *Miller* hearing into the record of the second *Miller* hearing, the order was improper and is vacated. Black's second *Miller* hearing is a distinct proceeding at which the burden is on the prosecution to prove "facts and circumstances that rebut the presumption against LWOP by the well-known standard of clear and convincing evidence." *Taylor*, 510 Mich at 135-136. Proceedings will begin anew to ensure that the proper standard of review is applied.

Although Black has not yet indicated an intent to introduce expert psychological evidence at his second *Miller* hearing, we nevertheless hold that the trial court's order did not violate Black's federal and state constitutional rights against self-incrimination. This case is distinguishable from *Estelle* because here, the trial court's order gave Black a choice. He may either (1) submit to a compelled psychological examination or (2) forgo the ability to introduce his own expert psychological evidence produced from a psychological interview of Black at the second *Miller* hearing. This is not a case where Black's own statements are being unwittingly used against him.

We emphasize that if Black indicates that he intends to introduce his own expert psychological evidence—and, by extension, chooses to submit to a compelled psychological examination—the results of such an examination would not be admissible during the prosecution's case-in-chief.[10] The prosecution would be permitted to introduce

---

[10] Courts have authority to manage discovery, provide protections for litigants, and seek to minimize litigation over whether the prosecution improperly used evidence or fruits from a compelled exam in their case-in-chief. Cf. *State v Reid*, 981 SW2d 166, 173 (Tenn, 1998) (affirming a procedural safeguard adopted in the lower courts limiting the prosecutor's access to any expert reports in capital cases until after the jury returns a guilty verdict and

evidence obtained during the compelled examination only for rebuttal purposes. "Ordinarily the only effective rebuttal of psychiatric opinion testimony is contradictory opinion testimony[.]" *United States v Byers*, 239 US App DC 1, 11; 740 F2d 1104 (1984). If a defendant introduces expert psychological evidence, the prosecution is permitted to "follow[] where the defense led." *Cheever*, 571 US at 95. As the Supreme Court has explained:

> The admission of this rebuttal testimony harmonizes with the principle that when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination. A defendant has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts. . . . [W]here a party provides testimony and then refuses to answer potentially incriminating questions, [t]he interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination. When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him. [*Id*. at 94 (quotation marks and citations omitted; second brackets in *Cheever*).]

In other words, the goal is to obtain high-confidence facts, not necessarily the evidence most favorable to the defendant. See *id*. The adversarial process is the mechanism for obtaining those facts. *Id*.

Black argues that the trial court's order forces him to make an impossible choice, requiring him to decide on a defense strategy before the prosecution rests its case-in-chief. We hold that a defendant's Fifth Amendment right against self-incrimination is not violated

---

the defendant confirms his intent to introduce expert mitigation proof at the sentencing hearing).

when a trial court orders a defendant to decide whether to submit to a compelled psychological examination before the prosecution rests its case-in-chief at a *Miller* hearing.[11]

The Fifth Amendment generally protects against the *use* of a compelled psychological examination at a trial or sentencing proceeding. Therefore, the focus of the Fifth Amendment inquiry is the use of the compelled statements. In *Chavez v Martinez*, 538 US 760; 123 S Ct 1994; 155 L Ed 2d 984 (2003), the United States Supreme Court addressed whether a defendant's Fifth Amendment right against self-incrimination was violated where the defendant was interrogated by a police officer but was not ultimately charged with a crime. The United States Supreme Court held that the defendant's right against self-incrimination was not violated, reasoning:

> Here, [the defendant] was never made to be a "witness" against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case. Nor was he ever placed under oath and exposed to the cruel trilemma of self-accusation, perjury or contempt. The text of the Self-Incrimination Clause simply cannot support the Ninth Circuit's view that the mere use of compulsive questioning, without more, violates the Constitution. [*Id*. at 767 (quotation marks and citations omitted).]

"[T]he Fifth Amendment does not prohibit official compulsion to speak, but merely precludes the use of compelled statements in a criminal case against the declarant[.]"

---

[11] The trial court order could be interpreted as requiring Black to decide whether to strike his expert's psychological evidence, which was already introduced during the first *Miller* hearing, from the record before the prosecution has rested its case-in-chief. We again clarify that the first *Miller* proceeding has been vacated and that the second proceeding must begin anew. Black must be allowed the choice to introduce his expert's evidence—and thereby open the door to the state's rebuttal evidence—after the state has rested its case-in-chief.

*Maldonado v Superior Court of San Mateo Co*, 53 Cal 4th 1112, 1129; 274 P3d 1110 (2012).

> [T]he Fifth Amendment does not directly prohibit the government from eliciting self-incriminating disclosures despite the declarant's invocation of the Fifth Amendment privilege. Absent a valid waiver of Fifth Amendment rights, this constitutional provision simply bars the direct or derivative use of such officially compelled disclosures to convict or criminally punish the person from whom they were obtained. [*Id*. at 1127 (emphasis omitted).]

In this case, our Fifth Amendment analysis is similarly focused on the use of compelled statements. The Fifth Amendment does not prohibit the trial court from requiring Black to decide whether to sit for a psychological examination by the prosecution's expert before the commencement of the *Miller* hearing. Black's decision about whether to partake in an evaluation by a prosecution expert does not lock him into a defense strategy at the *Miller* hearing.[12] Even if Black decides to sit for a psychological evaluation by a prosecution expert, the prosecution may use the fruits of such an evaluation only to rebut evidence presented by Black at the *Miller* hearing.[13] After the prosecution

---

[12] We understand that in most *Miller* hearings, the parties submit their expert reports to the trial court for review prior to the hearing itself. Therefore, the decision to retain a psychological expert and prepare a report occurs before the presentation of the prosecution's case-in-chief anyway. In other words, preparing the report in advance does not obligate a defendant to use the report.

[13] We also note that nothing in this opinion prohibits the trial court from imposing notice requirements for the identification of expert witnesses. This trial court continues to have inherent authority to regulate and manage its docket. See *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006) (explaining that control is "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). This case does not disturb that authority. A trial court may (and likely should) impose notice requirements, such as setting a date to exchange witness lists and identify experts.

rests at the *Miller* hearing, Black may ultimately decide not to introduce expert psychological evidence. If Black makes this choice, the prosecution would be precluded from introducing evidence from its own psychological evaluation.

We caution that the scope of the inquiry at a court-ordered psychological evaluation by a prosecution expert is limited to genuine psychological assessment. Court-ordered psychological evaluations may not be used as a back door for cross-examination or general interrogation. The goal of the psychological evaluation should be to ascertain accurate information regarding the defendant's mental condition. In the same vein, the scope of rebuttal testimony must be limited to the scope of evidence presented by the defendant, even if that scope is narrower than the initial referral question. We emphasize this and encourage trial courts to use appropriate measures, including discovery sanctions, to address any misuse of the procedures outlined in this opinion.

## V. CONCLUSION

We hold that a trial court may compel a defendant to submit to a psychological examination by a prosecution expert as a precondition to admitting the defendant's own expert psychological evidence at a *Miller* hearing. In this case, the trial court's order did not violate Black's federal and state constitutional rights against self-incrimination because

---

This is not to say that a defendant must decide prior to the prosecution's case whether to *call* an expert. But a trial court may require a defendant to *identify* any expert that it may wish to call. This system works for criminal trials. We see no reason why the same system would not work for *Miller* hearings. The parties both identify their witnesses and experts ahead of the hearing. But the defense does not have to decide which witnesses to call (including experts) until after the prosecution rests its case-in-chief. This fosters an efficient process and avoids trial (or hearing) by surprise, while safeguarding a defendant's right against self-incrimination and keeping the burden of proof squarely with the prosecution.

20

the order gives Black the choice of whether to submit to a court-ordered psychological examination ahead of his *Miller* hearing. We thus affirm the decision of the Court of Appeals but clarify that if Black chooses to undergo a psychological evaluation by a prosecution expert, any evidence obtained during the examination is admissible only as rebuttal. The prosecution may not use the evidence as part of its case-in-chief.

To the extent the trial court sua sponte incorporated the record from the first *Miller* hearing, and to the extent the trial court relied on Black's indication of intent to introduce psychological evidence during the first *Miller* hearing, we vacate the trial court's orders. We remand to the trial court for further proceedings, consistent with this opinion.[14]

Noah P. Hood
Megan K. Cavanagh
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

---

[14] We reject Black's request to remand this case to a different judge. The trial court judge did not make significant, repeated errors, as Black claims. See *People v Walker*, 504 Mich 267, 285-287; 934 NW2d 727 (2019). Nothing in the trial court record indicates that the judge would be unable or unwilling to follow this Court's instructions on remand.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                     No. 168159

DONYELLE MICHAEL BLACK,

      Defendant-Appellant.

_____

THOMAS, J. (*concurring*).

I agree with the majority's conclusion that a defendant can be compelled to sit for a psychological examination, consistent with *Estelle*,[1] *Buchanan*,[2] and *Cheever*,[3] when the defense, after the prosecution's case-in-chief in a *Miller* hearing, presents expert psychological evidence or testimony based on an examination of the defendant.[4]

I write separately to highlight that the federal and state caselaw that we rely on permits, but guards the scope of, a compelled examination and resulting testimony. In

---

[1] *Estelle v Smith*, 451 US 454; 101 S Ct 1866; 68 L Ed 2d 359 (1981).

[2] *Buchanan v Kentucky*, 483 US 402; 107 S Ct 2906; 97 L Ed 2d 336 (1987).

[3] *Kansas v Cheever*, 571 US 87; 134 S Ct 596; 187 L Ed 2d 519 (2013).

[4] As *Cheever* stated, "When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him." *Cheever*, 571 US at 94. Of course, both the prosecution and defense may introduce other expert evidence in *Miller* hearings that does not involve a psychological expert who has examined the defendant, consistent with usual constraints on expert testimony.

*Buchanan v Kentucky*, 483 US 402, 408-412; 107 S Ct 2906; 97 L Ed 2d 336 (1987), the prosecution was only allowed to use evidence obtained during an evaluation for involuntary treatment—conducted while the defendant was in pretrial custody—to rebut testimony related to the defendant's affirmative defense of extreme emotional disturbance. Portions of the evaluation that were not "similar in nature" to evidence presented by the defense were redacted. See *id.* at 423 n 20. In *Kansas v Cheever*, 571 US 87, 90-91; 134 S Ct 596; 187 L Ed 2d 519 (2013), the defendant presented a voluntary-intoxication defense in state court regarding the effect of his methamphetamine use on his mental status when he committed the offense. The prosecution was allowed to use evidence from a psychiatric evaluation ordered by a federal court which was limited "to assess[ing] how methamphetamine use had affected [the defendant] when he shot" the victim. *Id.* at 91-92. In its decisions, the United States Supreme Court has limited the admissibility and scope of compelled psychological examinations to safeguard constitutional guarantees. *Estelle v Smith*, 451 US 454, 465; 101 S Ct 1866; 68 L Ed 2d 359 (1981) (observing that the psychiatrist's evaluation could not be considered "a routine competency examination"); *Buchanan*, 483 US at 423 n 20, 424 (stressing that the purpose of the examination was "whether petitioner should be committed for psychiatric treatment, not whether he was competent to stand trial," and distinguishing the defendant's Sixth Amendment claim from *Estelle*, where the defendant "had not received the opportunity to discuss with his counsel the examination or its scope"). In ordering examinations, our courts should be mindful of the question put to the psychological expert and ensure that any compelled examination and resulting testimony are similarly focused.

Tailoring the scope of an examination ensures that rights against self-incrimination, as well as related Sixth Amendment rights, are respected. See *Delguidice v Singletary*, 84 F3d 1359, 1362 (CA 11, 1996), citing *Buchanan*, 483 US at 424-425 ("[T]he Sixth Amendment right to counsel requires that counsel be given *advance* notice of the scope and nature of a psychological examination so that counsel can discuss with the client the advisability of undergoing the examination and give other appropriate advice."); cf. *United States v Johnson*, 383 F Supp 2d 1145, 1154-1164 (ND Iowa, 2005) (discussing, in a sentencing case under FR Crim P 12.2, various federal decisions and state rules regarding the scope of compelled psychological examination questions about the offense and concluding that, in addition to compliance with the federal court rule, a defendant could make a showing under the facts of their case that the expert is not permitted to ask offense-specific questions); *Traywicks v State*, 927 P2d 1062, 1065; 1996 OK CR 54 (Okla Crim App, 1996) (holding that while the state may rebut an insanity defense, "it does not appear that the State's expert is granted *carte blanche* in examining the defendant") (emphasis omitted); see also *Maldonado v Superior Court of San Mateo Co*, 53 Cal 4th 1112, 1138; 274 P3d 1110 (2012) (allowing, in cases of pretrial disclosure of an anticipated mental-state defense, that the parties can "debate how those materials may apply as fair rebuttal to this defense" and recognizing the trial court's power to "issue all appropriate protective orders against improper use, both direct and derivative, of evidence derived from the examinations"). This limitation serves to uphold the right against compelled self-incrimination and, as the majority cautions, not create a "back door" for "general interrogation." The federal and state cases permitting compelled examinations under the

circumstances here have done so under an implicit or explicit limitation of the scope of the examination and the resulting testimony.

I also write to highlight additional issues which are not presently before this Court but which may subsequently arise in *Miller* hearings when a defendant seeks to offer expert testimony based on a psychological examination of the defendant. First, the identity of the expert and the process for their appointment are not before us. I note that in other instances in Michigan where compelled examinations are conducted, statutes provide that the court initially appoints either the Center for Forensic Psychiatry or another qualified examiner. See MCL 768.20a(2) (criminal responsibility related to claims of insanity); MCL 330.2026(1) (competence to stand trial). For criminal-responsibility examinations, if a referral is not made to the Center for Forensic Psychiatry, it must be made to "personnel meeting standards determined by the department of health [and human services] under rules promulgated pursuant to the administrative procedures act of 1969[.]" MCL 768.20a(9). For competency examinations, courts can appoint only the Center for Forensic Psychiatry or another facility that is licensed by the Department of Health and Human Services to conduct such examinations. MCL 330.2026(1). When an independent prosecution expert is ordered in the context of competency, for example, the prosecution may obtain an independent examination only on a showing of good cause. See MCR 6.125(D) ("On a showing of good cause by either party, the court may order an independent examination of the defendant relating to the issue of competence to stand trial.").

Second, new practices and procedures for *Miller* hearings may be necessitated by our opinion. We understand that in most *Miller* hearings, the parties submit, prior to the hearing, all proposed evidence, including expert evaluations. Given our holding today,

4

new practices may be developed through trial courts' authority to manage discovery and the presentation of evidence, court rules, or legislative action. For example, some other states have implemented specific procedures prior to and during a compelled psychological examination. See, e.g., *State v Reid*, 981 SW2d 166, 174 (Tenn, 1998) (noting that examinations may be videotaped); Fla R Crim P 3.202(d) (allowing attorneys for the state and the defendant to attend an examination of the defendant by a state expert in preparation for a death penalty hearing); cf. MCL 330.2028(1) (requiring personnel, when conducting a competency examination, to "consult with defense counsel"); MCR 6.425(A)(2) ("On request, the probation officer must give the defendant's attorney notice and a reasonable opportunity to attend the presentence interview."). As another example, in the context of the admissibility of other compelled examinations for rebuttal, other states have also grappled with the concern that the prosecutor's case-in-chief will reflect information gleaned in or derived from a compelled psychiatric examination. See, e.g., *Reid*, 981 SW2d at 173 (affirming a procedural safeguard adopted in the lower courts limiting the prosecutor's access to any expert reports in capital cases until after the jury returns a guilty verdict and the defendant confirms his intent to introduce expert mitigation proof at the sentencing hearing).

In sum, I concur with the majority that, under the constraints our decision lays out, a compelled examination may be ordered, consistently with the state and federal protections against self-incrimination. I also agree that the compelled examination or evidence derived from it can only be used if the defense seeks to admit expert psychological evidence obtained from an examination of the defendant and only in rebuttal. I write separately to draw attention to the question of the scope of any compelled examination and

5

resulting testimony, as well as issues confronted in other states that have allowed compelled examinations in other sentencing contexts.

Kimberly A. Thomas